<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: JESSICA DAWN BERNARD, | : | Chapter 7 |
| | : | Bankruptcy No. 13-3649 |
| Debtor. | : | |
| | : | |
| NIESCHMIDT LAW OFFICE, | : | |
| | : | |
| Appellant, | : | Civil Action No. 14-6484 (MAS) |
| | : | |
| v. | : | Adv. Pro. No. 14-01261-MBK |
| | : | |
| JESSICA DAWN BERNARD, | : | **OPINION** |
| | : | |
| Appellees. | : | |

<u>**SHIPP, District Judge.**</u>

This matter arises from an adversary proceeding under 11 U.S.C. § 532(a)(2)(A) of the Bankruptcy Code against Jessica Dawn Bernard ("Debtor" or "Appellee"), contesting the dischargeability of a certain debt (the "Nondischargeability Action"). Here, Nieschmidt Law Office ("Appellant" or "Creditor") appeals the Bankruptcy Court's Order, dated September 22, 2014 (the "September 22 Order"), entering judgment in favor of the Debtor. Appellant takes issue with the Bankruptcy Court's determination that it failed to establish by a preponderance of the evidence that Debtor made a false representation or a material omission reflecting her false intent to pay for the services rendered by Creditor. For the reasons that follow, the Court affirms the Bankruptcy Court's September 22 Order.

**I.   Background**

The facts are taken from the record and not disputed. Creditor represented Debtor in the matter of *Jay Bernard v. Jessica Bernard*, Superior Court of New Jersey, Chancery Division-

Family Part, Mercer County, Docket No. FM-11-783-11K, a divorce proceeding filed against Debtor by her now ex-spouse (the "Divorce Proceeding"). (*See* Adversary Compl. ¶ 4, *located at* Appendix of Appellant ("Appellant App.") Ex. 1.) Debtor originally counseled with Creditor for a complimentary legal proceeding concerning the Divorce Proceeding, where default had been entered against Debtor. (*Id.* at ¶ 5.) On September 6, 2011, Creditor and Debtor entered into a written retainer agreement (the "Retainer"). (*Id.* at ¶ 6.) In exchange for an initial retainer of $1,000 and a promise to make continuing payments to Creditor, Creditor agreed to provide legal representation to Debtor in connection with the Divorce Proceeding. (*Id.*) Debtor historically had worked as a cafeteria worker, but there were lapses in her employment during periods where she cared for her children. She also had various side jobs. (*See* Certified Hearing Transcript ("Tr.") 11:11-17, *located at* Appellant App. Ex. 8.)

During the course of the Divorce Proceeding, Creditor filed a successful application to vacate the default entered against Debtor, allowing her to participate in the Divorce Proceeding and its major disputed issues, including custody, parenting time, alimony, child support, life insurance, health insurance, debt allocation, and equitable distribution of assets. (*See* Adversary Compl. ¶ 7.) The Divorce Proceeding was assigned a very short schedule for its pre-trial period, apparently because of the age of the Divorce Proceeding. The schedule included a brief discovery period, early settlement panel on February 15, 2012, economic mediation on April 12, 2012, intensive settlement conference on April 19, 2012, and a trial date scheduled for May 7-10, 2012. (*Id.* at ¶ 8.)

On April 5, 2012, Debtor was deposed for the Divorce Proceeding. (*See* Deposition of Jessica Bernard ("Bernard Dep."), *located at* Appellant App. Ex. 5, at Ex. 3.) During the deposition, Debtor was questioned about the possibility of refinancing the marital home. When

2

asked if she had made any inquiries about whether she would qualify for a mortgage, Debtor responded: "No. Currently I'm going to be by the end of this year filing bankruptcy, so after that a couple of years." (Bernard Dep. 87:4-8.) When asked if she had consulted with a bankruptcy attorney, Debtor replied, "A little bit over the phone." (*Id.* at 87:9-11.) This was the first time that Creditor heard of any intention that Debtor "was either contemplating filing for bankruptcy, going to file for bankruptcy, or had consulted with a bankruptcy attorney, or had any type of a scheme or a plan regarding any of the debts or assets to work it out through some type of bankruptcy proceeding." (Tr. 17:9-15.) Creditor testified that, while it inquired as to the timing of Debtor's conversation with bankruptcy counsel, Debtor could not remember when she had the conversation, but indicated that it was "within the last year." (*Id.* at 21:9-15.)

Creditor alleges that there was not sufficient time to be relieved as counsel for Debtor because of the scheduled upcoming events in the Bankruptcy Proceeding. Pursuant to New Jersey Superior Court Rule 5:3-5(d)(2), an attorney in a divorce proceeding may not withdraw as counsel without leave of the court within ninety days of the trial date, and Creditor was unable to obtain a motion return date before the scheduled events. Creditor also thought filing a motion would amount to wasted effort, as opposing counsel had indicated that it would oppose an application to withdraw and Creditor did not believe that the Court would allow it to withdraw as counsel on the eve of trial. (*See* Adversary Compl. ¶ 12.) Creditor testified that, after the April 5, 2012 deposition, it was relayed to Debtor "that there existed a bit of a conflict of interest all of a sudden because she had declared that she was going to be filing for bankruptcy and I didn't feel like working for free and that was something I should've been told." (Tr. 19:17-22.) Creditor testified that he further told Debtor that "you basically turned this into a pro bono case going forward if you file for bankruptcy because you've just told me that you intend to file for

3

bankruptcy. I will continue to bill you and I'll figure out if I have to take action and try and pull this out of a bankruptcy down the road. And there was really no response to that." (*Id.* at 20:6-12.) At no point did Creditor formally attempt to withdraw as counsel for Debtor.

After paying her initial retainer fee of $1,000, Debtor paid another $1,000 during October 2011 to Creditor for services incurred. Thereafter, Debtor paid another $1,100 in February 2012 to Creditor, and made a final payment of $500 to Creditor in March 2012. (*See* Tr. 15:21, 16:20, *citing* Appellant App. Ex. 3, at Ex. 1.) Debtor's account balance was approximately $4,000 as of April 16, 2012, for work done prior to April 2012. As indicated on Creditor's invoices to Debtor, Debtor's account balance increased to $11,092.34 by May 14, 2012, for services that occurred in April 2012. (*See id.* at 16:19-17:6; *see also* Appellant App. Ex. 3, at Ex. 1.) According to Creditor, March and April of 2012 "consume[d] almost the entire bulk of the billing because that is Ms. Bernard's follow-up deposition . . . , the economic mediation and the trial." (Tr. 16:22-25.) After the conclusion of Creditor's representation of Debtor in May 2012, (*see* Adversary Compl. ¶ 13), Debtor's account balance was approximately $13,300. (*See* Appellant App. Ex. 3, at Ex. 1.) Due to interest from non-payment, Debtor's account balance increased to an excess of over $15,000. (*See id.*) Debtor did not make payments to Creditor after March 2012.

On May 7, 2012, Debtor and her ex-spouse entered a property settlement agreement (the "Settlement"), under which Creditor obtained a favorable result for Debtor in the Divorce Proceeding on the issues of custody, parenting time, alimony, child support, debt allocation, and equitable distribution of assets. (*See* Adversary Compl. ¶ 14; *see also* Appellant App. Ex. 3, at Ex. 4 (hereinafter the "Settlement Agreement").) As part of the Settlement, the Debtor had approximately one year, or until April 30, 2013, to refinance the mortgage on the marital home,

4

in order to pay off the current mortgage loan in her ex-spouse's name. If she successfully refinanced the mortgage, she would "be entitled to sole and exclusive ownership and title to the marital residence free and clear of any claim(s)" of her ex-spouse. (*See* Settlement Agreement 10.) If Debtor failed to refinance the marital residence by that time, Debtor would be obligated to vacate the marital residence and her ex-spouse would be entitled to sole and exclusive possession of the home. (*Id.*)

Subsequent to the Divorce Proceeding, Debtor made no payment on her balance due and owing Creditor. Creditor obtained a judgment against Debtor on November 14, 2013, in the amount of $15,000 plus costs in the Superior Court of New Jersey, Law Division, Mercer County, Docket Number MER-DC-7248-13 (the "Judgment"). (*See* Appellant App. Ex. 3, at Ex. 6.)

On December 4, 2013, Debtor filed the underlying Chapter 7 Bankruptcy Petition. Debtor listed a debt owed to Creditor in the amount of $15,372. On February 27, 2014, Creditor timely filed the Adversary Complaint against Debtor, seeking nondischargeability of this debt pursuant to 11 U.S.C. § 523(a)(2)(A). On August 27, 2014, the Bankruptcy Court conducted a trial. At the conclusion of Creditor's case-in-chief, the Bankruptcy Court issued a ruling on partial findings pursuant to Federal Rule of Bankruptcy Procedure 7052(c), which incorporates Federal Rule of Civil Procedure 52(c), in favor of Debtor. The Bankruptcy Court found that Creditor had failed to satisfy its burden of proof as required to establish liability under 11 U.S.C. § 523(a)(2)(A). (*See* Tr. 43-48.) By order dated September 22, 2014, the Bankruptcy Court entered judgment in favor of Debtor. (*See* ECF No. 1-3.) Creditor timely filed a Notice of Appeal to this Court on September 26, 2014. (*See* ECF No. 1.)

## II.   Jurisdiction and Standard of Review

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees. *See* 28 U.S.C. § 158(a). The standard of review for bankruptcy court decisions "is determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005). Findings of fact are reviewed under a clearly erroneous standard, where a factual finding may only be overturned "when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re Cellnet Data Systems, Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (quoting *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Legal conclusions, on the other hand, are subject to *de novo*, or plenary, review by the district court. *See Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997).

If the issue presented on appeal involves both findings of facts and conclusions of law, the district court must apply a mixed standard of review. *Mellon Bank, N.A. v. Metro Commc'n, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991). The district court must accept the bankruptcy court's "findings of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Id.* (quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101-02 (3d Cir. 1981).

## III.   Discussion

### A.   Nondischargeability of Debts Under Section 523

"The overriding purpose of the Bankruptcy Code is to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start." *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995). The Bankruptcy Code, however, does provide statutory exceptions to discharge

6

in certain circumstances involving debtor misfeasance. *See* 11 U.S.C. § 523. It is well-established that "exceptions to discharge, which reflect a congressional determination that other public policies outweigh the debtor's need for a fresh start, should be narrowly construed against the creditor and in favor of the debtor." *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir. 1993).

Section 523 of the Code provides that a discharge under, *inter alia*, Chapter 7 of the Code "does not discharge an individual from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To successfully raise an objection to discharge, a party must establish by a preponderance of the evidence that the debt is not dischargeable. *See In re Cohn*, 54 F.3d at 1114 (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). Thus, pursuant to § 523(a)(2)(B), a party must prove by a preponderance the following elements:

> (1) that the debtor obtained money, property or services through a material misrepresentation; (2) that the debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) that the debtor made the misrepresentation with intent to deceive; (4) that the plaintiff reasonably relied on the representation; and (5) that the plaintiff suffered loss, which was proximately caused by the debtor's conduct.

*In re Santos*, 304 B.R. 639, 651 (Bankr. D.N.J. 2004). The existence of a misrepresentation is "[c]entral to a § 523(a)(2)(A) claim." *In re Hilley*, 124 F. App'x 81, 82 (3d Cir. 2005) (citing *Field v. Mans*, 516 U.S. 59, 66 (1995)). "[B]ecause a debtor will rarely, if ever, admit that deception was his purpose, . . . intent to deceive can be inferred from the totality of the circumstances, including the debtor's reckless disregard for the truth." *In re Cohn*, 54 F.3d at 1118-19.

Here, the Bankruptcy Court entered judgment in favor of Debtor pursuant to Bankruptcy Rule 7052(c), as it found that Creditor had failed to satisfy its burden of proof as required to establish liability under § 523(a)(2)(A). First, the Bankruptcy Court explained that Creditor was seeking to establish that Debtor's failure to advise it of her intention to file for bankruptcy during the course of its representation of her during the Divorce Proceeding constituted fraud. The Bankruptcy Court found that Creditor was most likely relying on establishing that this failure constituted a material omission through which Debtor created "a false pretense that you have the intention of paying counsel rather than filing bankruptcy and getting a discharge of [Debtor's] underlying obligation." (Tr. 45:24-46:1.) The Bankruptcy Court found that Creditor's lone evidence substantiating this intent was Debtor's testimony given at her April 5, 2012 deposition, in which Debtor acknowledged that she had consulted with a bankruptcy attorney and intended to file bankruptcy before the end of the year. The Court found that this evidence was insufficient to establish that "there was indeed a false representation made or a material omission or pretense created reflecting the false intent of the debtor to pay for the services rendered." (*Id.* at 47:20-22.)

In doing so, the Bankruptcy Court noted that, "[w]hile it certainly appears that Ms. Bernard, the debtor, did speak with her bankruptcy attorney, the record is not clear as to when, how long, whether there was any legal strategy employed, or whether she changed her mind with respect to filing a bankruptcy subsequent to that conversation." (*Id.* at 46:12-16.) While the Court noted that it "wouldn't surprise [it] if there was an intent to file bankruptcy and discharge the obligation going into this," it concluded that Creditor had failed to establish its proofs as to timing. (*See id.* at 46:17-19.)

8

First, the Bankruptcy Court found that any claim that Debtor never intended to pay for legal services was "belied by the fact that there were several payments made." (*Id.* at 46:24-25.) Next, the Court also noted that, prior to the rendering of substantial legal services in April 2012, Creditor had not substantiated that Debtor had no intention to pay for these services. The Bankruptcy Court reasoned that the Debtor could not have intended to file for bankruptcy at that time because she had the opportunity to refinance the marital home as part of the Settlement through April 30, 2013. This was based on the Court's "common sense" finding that a bankruptcy filing prior to the refinancing, which could occur at any time through April 30, 2013, would prevent the refinancing from occurring. (*See id.* at 47:4-10.) Further, the Court found that the large gap of time between the filing for bankruptcy by the Debtor and the date of her deposition and/or retention of Creditor was "the most troubling obstacle in order for plaintiff to prevail." (*Id.* at 47:11-18.) Specifically, Debtor did not file for bankruptcy until December 4, 2012—over a year and a half after her deposition testimony in which she testified that she had spoken to a bankruptcy attorney, and over two years after she retained Creditor as her counsel in the Divorce Proceeding. (*Id.* at 47:11-18.) Accordingly, the Court concluded that it was:

> not persuaded by the evidence presented that there was indeed a false representation made or a material omission or pretense created reflecting the false intent of [Debtor] to pay for the services rendered. There may indeed have been a change of heart or intention somewhere during the representation period but unfortunately the Court is unable to pinpoint such a date and correlate that with the services that have been rendered.

(*Id.* at 47:19-48:1.) Therefore, the Court found that Creditor "failed to satisfy the standards under [§] 523(a)(2)(A)," and found in favor of Debtor. (*Id.* at 48:2-3.)

On appeal, Creditor argues that the Court erred when it found that it had not met its burden of proof to satisfy Section 523(a)(2)(A). (*See* Rule 8006 Statement of Appellant at 2, ECF No. 2.) Specifically, Creditor argues that "the Bankruptcy Court erred in holding that

9

Plaintiff failed to prove that [Debtor] made a material misrepresentation and that [Debtor] did not intend to pay for the legal services rendered and disbursements that comprised the debt at issue." (Appellant's Br. at 11.) The Court rejects this argument. Fraud under § 523(a)(2)(A) is a factual issue, *see In re Hilley*, 124 F. App'x at 83, and the Bankruptcy Court was in the best position to assess the credibility of Debtor. A review of the record indicates that the Bankruptcy Court's finding that Creditor had failed to establish a false representation or a material omission or pretense that was created by Debtor, which reflected her false intent to pay for the services rendered by Creditor, was proper. In any event, Creditor had not provided, nor has this Court found, any basis to hold that the Bankruptcy Court's findings were clearly erroneous. While Creditor has argued that the Court did not properly consider that Debtor requested that Creditor remain her legal counsel after her deposition, this is not enough to establish that the Bankruptcy Court's findings were in clear error. A factual findings is clearly erroneous only if the reviewing court is left with the "definite and firm conviction that a mistake has been committed," even if there is evidence to support the finding. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d. Cir. 1992) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). The fact that Debtor wanted Creditor to remain as her legal counsel does not leave this Court with a "definite and firm conviction that a mistake has been committed." *Id.*

Indeed, even a *de novo* review of the record shows that Creditor has failed to establish, by a preponderance of the evidence, that there was in fact a material omission or pretense created by Debtor that reflected her false intent to pay for the services rendered by Creditor. Any argument that Creditor did not intend to pay for the services rendered by Debtor as of the date of the retainer agreement is disproved by the fact that Debtor made several payments to Debtor through March 2012. While Debtor did testify at her deposition that she would be filing bankruptcy "by

10

the end of this year," and that she had consulted with a bankruptcy attorney "[a] little bit over the phone," (Bernard Dep. 87:4-11), this testimony is not enough to substantiate that Debtor had no intent to pay for Creditor's services. As the Bankruptcy Court aptly observed, "the record is not clear as to when, how long, whether there was any legal strategy employed, or whether she changed her mind with respect to filing a bankruptcy subsequent to that conversation." (Tr. 46:13-16.)

This case, therefore, is significantly different from the cases that Debtor relies on, where there is evidence in the record which allowed the court to determine a date where the debtor no longer intended to pay for services and to correlate that date with the services rendered thereafter. *See, e.g., In re Miller*, 228 B.R. 237, 240-41 (Bankr. W.D. Mo. 1998) (finding that the debtor "patently lacked the intent to repay the charges he incurred after he consulted and paid his bankruptcy attorney on March 17," and therefore refusing to discharge charges and cash advances incurred by the debtor after—but not before—that date). The Court agrees with the Bankruptcy Court in that there may have been, at some point, some intent on the part of Debtor to file for bankruptcy and consequently avoid paying for the services rendered by Creditor. It would be, however, entirely speculative for this Court to decide when Debtor no longer intended to pay for these services; the Court cannot blindly draw a line in the sand establishing when the alleged fraud began. It was up to Creditor to establish by a preponderance of evidence that Debtor was committing fraud by accepting its services with no intention to pay for them. Creditor's failure to do so dooms its claims and, consequently, this appeal.

Further, the existence of any sort of material omission reflecting Debtor's alleged fraudulent intent is negated by the issues emphasized by the Bankruptcy Court. At some point after having some sort of conversation with a bankruptcy attorney, Debtor entered into the

11

Settlement, wherein she was given an opportunity to refinance her marital home by or before April 30, 2013, in order to keep it. Considering Debtor made clear that she wished to keep the marital home, it would defy logic that Debtor intended to file for bankruptcy and avoid paying for the services rendered by Creditor. The timing of the Settlement is also significant; Debtor entered into the Agreement in May 2012, immediately preceding the two months in which Creditor performed the bulk of its legal services for Debtor. Further, the most glaring hurdle for a finding of fraudulent intent on Debtor's behalf during the relevant time period is that Debtor did not actually file for bankruptcy until approximately eighteen months after her deposition, and over two years after she retained Creditor. This long stretch of time, coupled with the Debtor's decision to attempt to refinance her home, makes it impossible to conclude that Debtor actually hid a bankruptcy plan from Creditor or concealed such a plan for bankruptcy from Creditor with the intent to avoid paying for Creditor's legal services. Here, the record only shows that Debtor spoke with a bankruptcy attorney—there is no evidence that Debtor took any steps to retain counsel, create a definitive plan for bankruptcy, or file for bankruptcy during the relevant time period. The Court fails to see how this record can establish by preponderance of the evidence any intent on Debtor's behalf to avoid paying for the legal services of Creditor by filing for bankruptcy.[1]

Finally, Creditor passingly mentions that the Bankruptcy Court held it to the wrong standard by stating that it "had an obligation to 'establish by independent evidence' the existence

---

[1] While Creditor is challenging the factual determinations of the Bankruptcy Court, the Bankruptcy Court's decision would stand even if Creditor was challenging the Bankruptcy Court's legal determination that the debt owed to Creditor was nondischargeable. A challenge to a legal determination of the bankruptcy court requires a plenary review by the district court on appeal. Because Creditor failed to establish the existence of fraudulent intent on Debtor's behalf, there can be no doubt that Creditor failed to establish by a preponderance of the evidence that the debt owed to it was not dischargeable.

of [Debtor's] fraud." (Appellant's Br. at 12.) Creditor argues that this is "contrary to the circumstantial evidence standard that is the benchmark of fraud cases." (*Id.*) The Court disagrees with Creditor's (largely unsubstantiated) assertion that the Bankruptcy Court required direct, rather than circumstantial, evidence of fraud. Creditor is referring to the Bankruptcy Court's statement that, for Creditor to prevail, "he would have to establish by independent evidence by a preponderance of the evidence that as of the retention date . . . , that there was not an intention to pay for the legal services rendered, which, of course, is belied by the fact that there were several payments made." (Tr. 46:20-25.) As a threshold matter, because this was a bench decision, it is uncertain whether the Bankruptcy Court misspoke, or if it actually meant that Creditor needed "independent evidence."[2] Regardless, it is of no consequence here, because a review of the hearing transcript makes clear that the Bankruptcy Court considered all of the surrounding circumstances when reaching its decision. (*See* Tr. 45-48.) This is buttressed by the Bankruptcy Court's review of the relevant law, where it expressly states the following:

> **False pretenses do not necessarily require overt misrepresentations.** Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations for purposes of nondischargeability **where the circumstances of the case are such** that the omissions or failure to disclose create a false impression which is known by the debtor.

(*Id.* at 45:9-14 (emphasis added), *citing In re Bozzano*, 173 B.R. 990, 993 (Bankr. M.D.N.C. 1994).)

In sum, this Court finds that the Bankruptcy Court properly applied the legal standard to Creditor's claims. The Court further finds that Creditor has not provided any basis to hold that the Bankruptcy Court's findings of fact are clearly erroneous. On review, only a finding that the

---

[2] It is not clear to this Court exactly what "independent evidence" denotes, but the Court does not necessarily think that "independent evidence" means that Creditor was required to provide direct evidence of Debtor's fraudulent intent.

Bankruptcy Court misapplied the legal standard or made clear errors of fact would allow for reversal of the Bankruptcy Court's decision. Because Creditor has failed to establish either, and this Court's own review had revealed none, Creditor's appeal must be denied.

## IV. Conclusion

For the aforementioned reason, Appellant Creditor's appeal is denied, and the Bankruptcy Court's September 22 Order is affirmed. An appropriate order accompanies this Opinion.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated: June 30, 2015